1  LESTER J. MARSTON - California State Bar No. 081030
   E-mail: marston1@pacbell.net
2  RAPPORT AND MARSTON
   405 West Perkins Street
3  P.O. Box 488
   Ukiah, CA 95482
4  Telephone: (707) 462-6846
   FAX: (707) 462-4235
5
   Attorneys for Defendants
6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 GREGORY F. MULLALLY,            )    Case No. ED CV 07-1626 VAP
                                   )    (JCRx)
               Plaintiff,          )
12                                 )
   v.                              )    MEMORANDUM OF POINTS
13                                 )    AND AUTHORITIES IN
                                   )    SUPPORT OF DEFENDANTS'
   HAVASU LANDING CASINO, an       )    MOTION TO DISMISS FOR
14 enterprise of the Chemehuevi Indian )  LACK OF SUBJECT MATTER
   Tribe; JACKIE GORDON,           )    JURISDICTION
15 Personally and as General Manager of )
   the Havasu Landing Casino;      )
16 MANUEL JACQUES, Personally;     )    Date:      January 24, 2011
   and MARY PETERSON, Personally,  )    Time:      2:00 p.m.
17 Does 1-10,                      )    Judge:     Hon. Virginia A. Phillips
                                   )    Location:  Courtroom 2
18             Defendants.         )
                                   )
19 _____)

20                    **INTRODUCTION**

21        On March 3, 2008, this Court issued an "Order: (1) Granting in Part and

22 Denying in Part Defendants' Motion to Dismiss for Lack of Subject Matter

23 Jurisdiction, and (2) Staying Remaining Claims" ("Order") in this matter.  The

24 Order dismissed the claims filed by Plaintiff Gregory Mullally ("Mullally")

25 against Defendants Havasu Landing Casino and Jackie Gordon based on the

26 Chemehuevi Indian Tribe's sovereign immunity.  The Court denied the motion to

27 dismiss with regard to Mullally's claims for defamation against Manuel Jacques,

28 deliberate interference with contract against Mary Peterson and Does 1-5, and

conversion against Does 1-10.  The Court stayed proceedings with regard to the defamation and deliberate interference with contract claims, in order to permit Mullally to exhaust his tribal remedies.  Finally, the Court declined to address the conversion claim, until Mullally identified the persons against whom it was brought.

Mullally subsequently filed a complaint in the Chemehuevi Tribal Court asserting five claims, including the three claims that were not dismissed by this Court in its Order.  The Defendants in the Tribal Court proceedings filed a motion to dismiss or, in the alternative, for summary judgment, which was granted by the Tribal Court.  In its judgment, the Tribal Court ruled on the three claims that remain before this Court.

Mullally has now returned to this Court and the Court has placed this case back on its active civil calender.  Because the claims that remain before the Court have already been ruled on by the Tribal Court, those claims are now barred by the doctrines of res judicata and comity.  The Defendants, therefore, move the Court, pursuant to Fed. R. Civ. Proc. Rules 12(b)(1) and 12(b)(6), for an order dismissing all of the claims that remain before the Court, based on the doctrine of res judicata or, in the alternative, the doctrine of comity.  In this brief, the Defendants will demonstrate that: (1) it is appropriate to seek dismissal under Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) based on res judicata or comity where there is no dispute as to any material facts; (2)  the Chemehuevi Tribal Court has ruled against Mullally on the merits of  all of the remaining claims; (3) the remaining  claims are, therefore, barred by res judicata and must be dismissed; and (4) even if the claims cannot be dismissed on the grounds of res judicata, the Court is compelled to give comity to the judgment of the Chemehuevi Tribal Court and dismiss the claims on that basis.

//

//

# II.

## STATEMENT OF FACTS

On December 3, 2007, Mullally filed a "Complaint for Violation of Family and Medical Leave Act of 1993, Defamation, Deliberate Interference with Contract, and Conversion" ("Original Complaint").

On January 18, 2008, the Defendants filed a motion to dismiss or, in the alternative, for summary judgment with the Court.

In an Order dated March 3, 2008, the Court dismissed Mullally's first two causes of action, against the Havasu Landing Casino and Jackie Gordon, and stayed the remaining claims pending exhaustion of tribal remedies.

As a result of the Court's March 3, 2008, Order, three claims remain before the Court: (1) defamation against Manuel Jacques, (2) deliberate interference with contract against Mary Petersen and Does 1-5, and (3) conversion alleged against Does 6-10.[1]

On March 27, 2009, Mullally filed a complaint in the Chemehuevi Tribal Court. *Gregory F. Mullally v. Jacques Vasquez et al.,* Chemehuevi Tribal Court

---

[1]The Courts' March 3, 2008, Order leaves some question as to whether Mullally's fifth cause of action, for conversion against Does 5-10, remains before the Court.  The Court ruled that, "In light of the court's decision to stay Plaintiff's remaining claims, . . .  the Court declines to address the conversion claim until Plaintiff amends his pleading to identify the person against whom it is brought." March 3, 2008, Order, p. 11.  As will be discussed in detail in Section IV, below, Mullally brought the same claim, based on the same allegations against two tribal officials, Ve'la'aa White and Lester Marston, in his Tribal Court Complaint.  It is clear from the two complaints that the claim is the same, the only difference being Mullally's failure to identify the defendants in his Complaint filed with this Court. The Tribal Court ruled that the claim failed on the merits and was barred by the doctrine of sovereign immunity.  Thus, to the extent that the Court concludes that it can address the claim, res judicata would apply.  The Defendants urge the Court to address this issue now to avoid unnecessary and repetitious proceedings in the future relating to this claim.

Case No.  CIV 2009-03-003 RM. In the Tribal Court Complaint, Mullally asserted five claims.  Three of the claims were identical to the claims remaining before the Court: defamation against Jacques,  intentional interference with contract against Petersen and Jackie Gordon, and conversion  against  Ve'la'aa White, former Chairperson of the Chemehuevi Gaming Commission, and Lester Marston, Tribal Attorney.  A true and correct copy of the complaint in  *Gregory F. Mullally v. Jacques Vasquez, et al.,* is attached to the Declaration of Irene Esquerra in Support of Defendants' Motion to Dismiss ("Esquerra Declaration") as Exhibit 9.

In response, the Tribal Court Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion to Dismiss") with the Tribal Court. Mullally filed an opposition to the motion and the Tribal Court Defendants filed a reply.  True and correct copies of the Tribal Court Defendants' Motion to Dismiss, the Tribal Court Defendants' Memorandum of Points and Authorities In Support of Defendants' Motion to Dismiss, Mullally's Opposition to the Motion to Dismiss, the Tribal Court Defendant's Reply, Mullally's Response to the Tribal Court Defendants' Reply and the supporting declarations and exhibits are attached to the Esquerra Declaration as Exhibits 25-42.

On March 1, 2010, the Tribal Court heard oral argument on the Defendants' Motion to Dismiss.  Exhibit 45 to Esquerra Declaration, p. 2.

On March 22, 2010,  Chief Judge Robert Moeller of the Chemehuevi Tribal Court issued an "Opinion and Order (Corrected)" on the Defendants' Motion to Dismiss ("Opinion").  A true and correct copy of the Opinion is attached to the Esquerra Declaration as Exhibit 45.

On April 26, 2009, Judge Moeller issued "Findings of Fact, Conclusions of Law, and Judgment" ("Judgment") in the case. A true and correct copy of the Judgment is attached to the Esquerra Declaration as Exhibit 46.

In the Opinion and the Judgment, the Tribal Court granted the Tribal Defendants' Motion to Dismiss with respect to all claims.  The Tribal Court found

1   that all of Mullally's claims were barred by the Tribe's sovereign immunity under

2   tribal law,[2] and ruled that Mullally's claims failed on their merits. Exhibit 45 to

3   Esquerra Declaration, p. 8,   Exhibit 46 to Esquerra Declaration, p. 12.

4       The Chemehuevi Indian Tribe has not yet established a Court of Appeals, so

5   the Opinion and Judgment are a final non-appealable decision of the Tribal Court.

6   Declaration of Lester J. Marston in Support of Defendants' Brief in Response to

7   Court's Minute Order Dated December 7, 2010, p. 2, ¶ 4-7.

8                                      **III.**

9           **A RULE 12(b)(1) OR 12(b)(6) MOTION TO**
            **DISMISS IS APPROPRIATE IN THIS CASE.**
10

11      The Court of Appeals for the Ninth Circuit and the District Courts within

12  the Ninth Circuit recognize that a motion made pursuant to Rule 12(b)(1) or Rule

13  12(b)(6) is appropriate where the plaintiff's claims are barred by res judicata and

14  the defense raises no disputed issue of fact.  "The defendants raised res judicata in

15  their motion to dismiss under Rule 12(b)(6), rather than in a responsive pleading.

16  Ordinarily affirmative defenses may not be raised by a motion to dismiss, C.

17  Wright & A. Miller, *Federal Practice and Procedure*, § 1277, at 328-30, but this

18  is not true when, as here, the defense raises no disputed issues of fact." *Scott v.*

19  *Kuhlmann*, 746 F.2d 1377 (9th Cir. 1983);  *Marks v. Labor Ready Southwest Inc.*,

20  2009 U.S. Dist. LEXIS 35509 (D.C. Ariz. 2009); *Hensley v. United States District*

21  *Court*, 2008 U.S. Dist. LEXIS 11965, *19-*24 (E.D. Cal. 2008) (dismissing

22  claims pursuant to Rule 12(b)(1) and Rule 12(b)(6) based on res judicata).[3]

23

24          [2] The Tribal Court also ruled that in addition to the bar of sovereign
25  immunity, some of Mullally's claims were barred because the Tribal Council
26  never granted the Tribal Court subject matter jurisdiction to hear the claims.

27          [3]Extensive legal research carried out by counsel for the Defendants did not
28  reveal any case law addressing the issue of whether comity as applied to an Indian
    tribal court decision was a proper basis for a Rule 12(b) motion.  Clearly, however,

The Courts of the Ninth Circuit have also concluded that it is appropriate and permissible for the Court to take judicial notice of the Court's own record in this case and the filings in the Tribal Court where a defendant files a motion to dismiss:

> On a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. *MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).* A court may take judicial notice of its own files and of documents filed in other courts. *Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006)* (taking judicial notice of documents related to a settlement in another case that bore on whether the plaintiff was still able to assert its claims in the pending case); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)* (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); *Hott v. City of San Jose, 92 F. Supp. 2d 996, 998 (N.D. Cal. 2000)* (taking judicial notice of relevant memoranda and orders filed in state court cases). . . . "[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)* (citations omitted). "The existence and content of opinions and pleadings are matters capable of accurate and ready determination by resort to official court files that cannot reasonably be questioned." *Bogart v. Daley, No. CV 00-101-BR, 2001 U.S. Dist. LEXIS 9445, 2001 WL 34045761, at *2 (D. Or. June 28, 2001)* (citing *Fed. R. Evid. 201(b)(2)*).

*Hensley v. United States District Court*, 2008 U.S. Dist. LEXIS 11965, *5-*7 (E.D. Cal. 2008).

Defendants, therefore, request that the Court take judicial notice of the pleadings on file with the Court in this matter, the pleadings filed in the Tribal Court in *Gregory F. Mullally v. Jacques Vasquez et al.,* Chemehuevi Tribal Court Case No. CIV 2009-03-003 RM, the Rules of Pleading, Practice and Procedure of the Chemehuevi Tribal Court, the Rules of Evidence of the Chemehuevi Tribal Court, the Rules of Judicial Conduct of the Chemehuevi Tribal Court, and the

___

the principles of comity and res judicata are grounded in the same purposes: the recognition of a decision on the same issues and parties for purpose of avoiding needless, repetitious, and potentially inconsistent judgments. See, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

1   Rules Governing Conduct of Clerks for the Tribal Court of the Chemehuevi Indian

2   Tribe, which are attached as Exhibits 1-5 to the Esquerra Declaration, and the

3   Chemehuevi Tribe's Tribal Court Ordinance, which is attached as Exhibit 2 to the

4   Declaration of Ronald Escobar In Support of Defendants' Motion to Dismiss

5   ("Escobar Declaration"), filed herewith.

## III.

## THE STANDARD FOR RES JUDICATA.

The doctrine of claim preclusion (res judicata) provides that a final judgment on the merits bars a subsequent action between the same parties or their privies over the same cause of action. *Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518 (9th Cir. 1985)* . . . . 'The judgment prevents relitigation of all grounds and defenses that were or could have been raised in the action.' *Id.* (citing *Allen v. McCurry*, 449 U.S. 90, 94, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980)).

*In re Imperial Corp. of America*, 92 F.3d 1503, 1506 (9th Cir. 1996).

"Identity of claims exists when two suits arise from the same transactional nucleus of facts."  *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 770 (9th Cir. 2003), citing  *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1142, n.3 (9th Cir. 2002)*.  The doctrine of res judicata protects "litigants from the burden of relitigating an identical issue" and promotes "judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. at 326.

As the following section will make clear, the Tribal Court's Opinion and Judgment constitute a final judgment on the merits, in that the causes of action are the same in the two actions and they relate to the same parties.

## IV.

## MULLALLY'S REMAINING CLAIMS
## ARE BARRED BY RES JUDICATA.

In order to determine whether the doctrine of res judicata applies to Mullally's remaining claims, it is necessary to compare the claims set forth in the Original Complaint in this Court to the: (1) claims set forth in the complaint filed

1   in the Chemehuevi Tribal Court ("Tribal Court Complaint"); (2) the March 22,

2   2010, "Opinion and Order (Corrected)" issued by the Chemehuevi Tribal Court;

3   and (3) the April 26, 2010, "Findings of Fact, Conclusions of Law, and Judgment"

4   ("Judgment") issued by the Tribal Court.

5           As discussed above, there remains before this Court, Mullally's third,

6   fourth, and fifth causes of action.  The third cause of action, "Defamation - Manuel

7   Jacques," states, in relevant part:

8           On September 16, 2007, Manuel Jacques maliciously created and
            circulated a Memo about Plaintiff that he knew to be false in violation

9           of Section 45 California Civil Code.[4]

10   Original Complaint, p. 6, ¶ 28.

11           In his Tribal Court Complaint, the first cause of action is entitled

12   "Defamation–Jacques Vasquez."  (The Tribal Court Complaint names as

13   defendant "Jacques Vasquez a.k.a. Manuel Jacques").  The first cause of action

14   states, in relevant part:

15           On September 16, 2007 and later, Manuel Jacques maliciously
            created and circulated a Memo about Plaintiff that he Defendant knew

16           to contain false information about the Plaintiff in violation of the
            Tribal Defamation Ordinance.

17

18   Exhibit 6 to Esquerra Declaration, pp. 4-5. ¶ 28.

19           The fourth cause of action in the Original Complaint, "Intentional

20   interference with contractual relations – Mary Peterson, Does 1-5" states, in

21   relevant part:

22           31.    When Plaintiff filed disability claims with the State of
            California and his private insurance carrier, Mary Petersen refused to

23           submit the paperwork required by the State and his insurance so he
            might collect under the policies.

24           32.    Plaintiff asked Peterson on multiple occasions, both by
            certified letter and e-mail, to file the necessary paperwork.  On

25           November 5, 2007 she sent Plaintiff an e-mail stating that she was
            refusing to complete the forms because she was "only following

26           orders" given to her by persons unknown to Plaintiff.

27

28           [4]Section 45 of the California Civil Code is the definition of "libel."

Original Complaint, p. 7, ¶¶ 31-32.

The fourth cause of action in the Tribal Court Complaint is entitled

"Deliberate Interference With Contract -- Jackie Gordon and Mary Peterson."  It

states in relevant part:

> 39.    When Plaintiff filed disability claims with the State of
> California and his private insurance carrier, under the direction of
> Jackie Gordon, Mary Petersen refused to submit the paperwork
> required by the State and his insurance so he might collect under the
> policies.
> 40.    Plaintiff asked Peterson on multiple occasions, both by
> certified letter and e-mail, to file the necessary paperwork.  On
> November 5, 2007 she sent Plaintiff an e-mail stating that she was
> refusing to complete the forms because she was "only following
> orders".

Tribal Court Complaint, p. 6, ¶¶ 39-40.

The fifth cause of action in the Original Complaint, "Conversion - Does 6 -

10," states in relevant part:

> 35.    Between September 17 and October 25, 2007 Plaintiff attempted to
> retrieve his personal property from his office in the Casino.  Although
> Plaintiff was still employed, he was not allowed to do so.  On October 26,
> 2007 Plaintiff was allowed to retrieve a portion of his property, but some
> was kept for "examination" by the Casino's attorney, who claimed this
> property would be turned over to the "appropriate people" for examination,
> then returned.
> 36.    This property includes software on disks, a telephone directory and a
> number of files.
> 37.    Despite repeated demands by Plaintiff, this property has not been
> returned.

Original Complaint, p. 7, ¶¶ 31-32.

The fifth cause of action in the Tribal Court Complaint, entitled

"Conversion - Ve'la'aa White and Lester Marston," states in relevant part:

> 43.    Between September 7 and October 25, 2007 Plaintiff attempted to
> retrieve his personal property from his office in the Casino.  Although
> Plaintiff was still employed, he was not allowed to do so.  On October 26,
> 2007, Plaintiff was allowed to retrieve a portion of his property, but some
> was kept for "examination" by Les Marston, the Casino's attorney.
> 44.    This property included computer software on disks, a telephone
> directory and a number of files.
> 45.    Despite repeated demands by Plaintiff, some of this property has not
> been returned.

Tribal Court Complaint, p. 6-7, ¶¶ 43-45.

1    When the remaining claims before this Court are compared with Mullally's
2    Tribal Court Complaint, it is clear that the remaining claims presently before the
3    Court are the same claims involving the same parties as the first, fourth, and fifth
4    causes of action that were before the Tribal Court.

5    Each of these claims was the subject of a final judgment on the merits in the
6    Tribal Court. With regard to the cause of action for defamation against Jacques,
7    the Tribal Court ruled that the claim failed on its merits, because the alleged
8    defamatory statement made by Jacques in the memorandum contained no false
9    statement.  The Tribal Court also ruled that the statement was a privileged
10   publication under the Tribe's Defamation Ordinance and it was, therefore,
11   excluded from the Defamation Ordinance's definition of defamation. Opinion,
12   Exhibit 45 to Esquerra Declaration, pp. 12-13; Judgment, Exhibit 46 to Esquerra
13   Declaration, p. 13, ¶ 10.

14   With regard to the claim for deliberate or intentional interference with
15   contract against Petersen, the Tribal Court ruled that the claim failed on its merits
16   because Gordon and Petersen provided the information that Mullally claimed he
17   was denied by completing the forms and mailing them back to Mullally.  The
18   Tribal Court further ruled that Mullally failed to demonstrate that either the State
19   of California or the Colonial Insurance Company breached its contract with
20   Mullally, an essential element of a claim for intentional interference with contract.
21   Opinion, Exhibit 45 to Esquerra Declaration, pp. 15-16; Judgment, Exhibit 46 to
22   Esquerra Declaration, p. 14, ¶ 13.

23   With regard to the cause of action for conversion against White and
24   Marston, the Tribal Court again ruled that the claim failed on its merits.  The
25   Tribal Court ruled that Mullally failed to allege that White took or wrongfully
26   retained any of Mullally's property, and the claim, therefore, failed under the
27   Tribe's Conversion Ordinance.  The Tribal Court further ruled that Mullally failed
28   to show that, to the extent that Marston took possession of any of Mullally's

property, such possession was unauthorized.  The Tribal Court, therefore, concluded that the claim failed on its merits.  Opinion, Exhibit 45 to Esquerra Declaration, pp. 16-17; Judgment, Exhibit 46 to Esquerra Declaration, p. 14-15, ¶ 14.

The Order included a lengthy and detailed discussion of each of Mullally's claims and a detailed discussion of the tribal and federal law applicable to those claims.  The Judgment set forth a lengthy Statement of Findings of Facts and Conclusions of law.  The Judgment thoroughly addressed the legal and factual issues raised by Mullally's claims.

Mullally did not move the Tribal Court for rehearing on the matter.  The Chemehuevi Indian Tribe has not yet established a Court of Appeals.  The Order and Judgment, therefore, constitute a final judgment on the merits under tribal law.

A final judgment on the merits has been issued by the Tribal Court on the first, fourth, and fifth causes of action set forth in the Tribal Court Complaint. There is an identity of claims and parties between those causes of action and the third, fourth, and fifth causes of action in the Original Complaint.  As a result, those claims are barred by the doctrine of res judicata.  *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes*, 323 F.3d 767 (9th Cir. 2003).

**V.**

**THE REMAINING CLAIMS ARE ALSO BARRED BY COMITY**.

Even if the Court concludes that some of the claims are not barred by res judicata, the claims are, nevertheless, barred by the Tribal Court's Opinion and Judgment, because this Court is compelled to recognize the Opinion and Judgment based on the doctrine of comity.  Specifically, this Court is compelled to recognize the preclusive effect of the Tribal Court's ruling that Mullally's claims were barred by sovereign immunity under tribal law.

A determination as to whether a decision of a tribal court is subject to recognition by a federal court is an issue of comity.  *Wilson v. Marchington*, 127

F.3d 805, 807-808 (9th Cir. 1997).  In determining whether a tribal court judgment is subject to recognition, the federal courts must only consider whether: (1) the tribal court had personal jurisdiction over the parties; (2) subject matter jurisdiction over the claims, and (3) whether the parties were provided with due process.  *Id.*  In addition, the Court may consider certain other discretionary conditions:

> In synthesizing the traditional elements of comity with the special requirements of Indian law, we conclude that, as a general principle, federal courts should recognize and enforce tribal judgments. However, federal courts must neither recognize nor enforce tribal judgments if:
> (1) the tribal court did not have both personal and subject matter jurisdiction; or
> (2) the defendant was not afforded due process of law.
> In addition, a federal court may, in its discretion, decline to recognize and enforce a tribal judgment on equitable grounds, including  the following circumstances:
> (1) the judgment was obtained by fraud;
> (2) the judgment conflicts with another final judgment that is entitled to recognition;
> (3) the judgment is inconsistent with the parties' contractual choice of forum; or
> (4) recognition of the judgment, or the cause of action upon which it is based, is against the public policy of the United States or the forum state in which recognition of the judgment is sought.

*Marchington*, 127 F.3d at 810.

Review of a tribal court decision by a federal court does not permit the federal court to re-litigate the issues decided by the Tribal Court.  "Unless the district court finds the tribal court lacked jurisdiction or withholds comity for some other valid reason, it must enforce the tribal court judgment without reconsidering issues decided by the tribal court."  *AT&T Corporation v. Coeur D'Alene Tribe*, 295 F.3d 899, 903-904 (9th Cir. 2002).  "The tribal court's determination [of jurisdictional questions] is ultimately subject to review in the district court, but unless the federal court determines that the tribal court lacked jurisdiction, the federal court must defer to the tribal court and cannot allow re-litigation of the issues resolved in the tribal court."  *Tamiami Partners, Ltd. v.*

1    *Miccosukee Tribe of Indians of Florida*, 999 F.2d 503, 508 n. 12 (11th Cir. 1993),

2    (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19 (1987).

3         This is particularly important in the present case because, if the Court finds

4    that the Tribal Court's determination on the merits of Mullally's claims is not

5    enforceable because of the Tribal Court's conclusion that all of the claims are

6    barred by tribal sovereign immunity, the Court is still required to recognize the

7    Tribal Court's ruling on jurisdiction:

8         There is an important exception to the general rule that a final
          adjudication on the merits is a prerequisite to issue preclusion. It has
9         long been acknowledged that "the principles of *res judicata* apply to
          questions of jurisdiction as well as to other issues." *American Surety*
10        *Co. v. Baldwin*, 287 U.S. 156, 166, 77 L. Ed. 231, 53 S. Ct. 98 (1932).
          In particular, dismissals for lack of jurisdiction "'preclude relitigation
11        of the issues determined in ruling on the jurisdiction question.'"
          *Matosantos Commercial Corp. v. Applebee's Int'l Inc.*, 245 F.3d
12        1203, 1209 (10th Cir. 2001).

13   *Park Lake Resources LLC v. United States Department of Agriculture*, 378 F.3d

14   1132 (10th Cir. 2004).

15        As the following discussion will demonstrate, the Court is required to

16   recognize the Tribal Court's judgment because the Tribal Court had jurisdiction

17   over both Mullally and his claims, Mullally was provided with due process, and

18   none of the *Marchington* discretionary factors applies in this case.

19

20        **A.    The Tribal Court had Both Personal and Subject Matter
                   Jurisdiction Over Mullally and His Claims.**

21        "[T]he existence of both personal and subject matter jurisdiction is a

22   necessary predicate for federal court recognition and enforcement of a tribal

23   judgment." *Id.* at 811.  By filing a complaint seeking relief in Tribal Court,

24   Mullally consented to the personal jurisdiction of the Tribal Court. "[W]here the

25   nonmembers are the *plaintiffs*, and the claims arise out of commercial activities

26   within the reservation, the tribal courts may exercise civil jurisdiction." *Smith v.*

27   *Salish Kootenai College*, 434 F.3d 1127, 1132 (9th Cir. 2006), citing *Williams v.*

28   *Lee*, 358 U.S. 217 (1959)."  Mullally, in fact, affirmatively alleged in his Tribal

1   Court complaint that the Chemehuevi Tribal Court had jurisdiction over his claims

2   and that venue is proper in the Tribal Court.  Exhibit 6 to Irene Esquerra

3   Declaration, pp. 2-3, ¶¶ 8-17.

4           Even if Mullally had not affirmatively alleged that the Chemehuevi Tribal

5   Court had jurisdiction, there is no question that, under the applicable federal court

6   precedent, the Tribal Court had jurisdiction over Mullally and his claims.  In

7   *Montana v. United States*, 450 U.S. 544 (1980), the Supreme Court articulated

8   what has come to be regarded as the fundamental test for determining when a

9   tribe's inherent regulatory powers extend to the activities of non-Indians:

10          To be sure, Indian tribes retain inherent sovereign power to exercise
            some forms of civil jurisdiction over non-Indians on their
11          reservations, even on non-Indian fee lands.  *A tribe may regulate,
            through taxation, licensing, or other means, the activities of
12          nonmembers who enter consensual relationships with the tribe or its
            members, through commercial dealing, contracts, leases, or other
13          arrangements. . . .*   A tribe may also retain inherent power to exercise
            civil authority over the conduct of non-Indians on fee lands within its
14          reservation when that conduct threatens or has some direct effect on
            the political integrity, the economic security, or the health or welfare
15          of the tribe.

16  *Montana v. United States*, 450 U.S. at 565-566 [citations omitted] (emphasis

17  added).[5]

18          In the present case, Mullally falls under the consensual relationship element

19  of the *Montana* test in a number of ways.

20          First, Mullally alleges that, at the time of the majority of events that are the

21  basis for Mullally's claims, Mullally was an employee of the Tribe's Havasu

22  Landing Casino ("Casino"), which is located within the Chemehuevi Indian

23  Reservation. Original Complaint, p. 2 ¶ 8.  He was an employee of the Casino

24  from about July 1, 2003, until about November 1, 2007.  Original Complaint, pp.

25  3, 5, ¶¶ 9, 20.  Such an employment relationship clearly falls within the *Montana*

26  _____

27          [5]While *Montana* dealt with a tribe's regulatory authority, it has been read to
    apply equally to a tribe's adjudicative authority.  *Strate v. A-1 Contractors*, 520
28  U.S. 438, 453 (1997).

1  test as it is a "consensual relationships with the tribe or its members, through . . .

2  contracts." *Id.*

3      Second, in order to work at the Casino, Mullally was required to obtain a

4  gaming license from the Chemehuevi Gaming Commission. Original Complaint,

5  p. 3, ¶ 10. "A tribe may regulate, through . . . licensing, . . . the activities of

6  nonmembers who enter consensual relationships with the tribe or its members,

7  through . . . contracts." *Id.* It was, in fact, Mullally's failure and refusal to renew

8  his gaming license that set in motion the events out of which Mullally's purported

9  claims arose. Original Complaint, pp. 3-4, ¶ 12.

10      Third, all of the events relevant to Mullally's claims occurred on trust land

11  on the Chemehuevi Indian Reservation.[6]  They, thus, clearly fall within the

12  territorial jurisdiction of the Tribal Court.

13      Finally, with regard to the three claims before this Court, Mullally alleged in

14  his Tribal Court Complaint that all of his claims were based on Tribal law. "This is

15  a civil tort action under the laws of the Chemehuevi Indian Tribe." Tribal Court

16  Complaint, p. 2, ¶ 8, Exhibit 6 to the Esquerra Declaration.  Mullally specifically

17  alleged that the defamation claim is based on the Tribe's Defamation Ordinance,

18  Tribal Court Complaint, p. 5, ¶ 28.  The Tribal Court determined that it had

19  jurisdiction based on the Defamation Ordinance, Opinion, p. 11, ¶ 3. While

20  Mullally did not specifically allege that his conversion claim, that is the applicable

21  law for a conversion claim filed in the Tribal Court, arose under tribal law, the

22  Tribal Court concluded that it had jurisdiction over the claim on that basis.

23  _____

24      [6] The Defendants request that the Court take judicial notice of the
    documents attached to the Declaration of Ronald Escobar In Support of
25  Defendants' Motion to Dismiss. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500,
    504 (9th Cir. 1986).  Exhibit 1 to the Escobar Declaration is the Trust Patent for the
26  Chemehuevi Indian Reservation.  Exhibit 7 to the Escobar Declaration is the
27  Tribe's Tribal-State Compact.  These two documents taken together show that the
    Havasu Landing Casino is located on the Chemehuevi Indian Reservation.
28

1   Thus, Mullally and the claims set forth in the Complaint all fall within the

2   jurisdiction of the Tribal Court.  *Montana*, *supra*.

3   **B.      Mullally Was Afforded Due Process by the Tribal Court.**

4   The *Marchington* Court articulated the standard for establishing whether a

5   litigant was afforded due process for the purposes of comity:

6           Due process, as that term is employed in comity, encompasses
        most of the *Hilton* [*v. Guyot*, 159 U.S. 113(1895)] factors, namely
7       that there has been opportunity for a full and fair trial before an
        impartial tribunal that conducts the trial upon regular proceedings
8       after proper service or voluntary appearance of the defendant, and
        that there is no showing of prejudice in the tribal court or in the
9       system of governing laws. Further, as the Restatement (Third) noted,
        evidence "that the judiciary was dominated by the political branches
10      of government or by an opposing litigant, or that a party was unable
        to obtain counsel, to secure documents or attendance of witnesses, or
11      to have access to appeal or review, would support a conclusion that
        the legal system was one  whose judgments are not entitled to
12      recognition."

13   *Marchington*, 127 F.3d at 811.

14   The Tribal Court proceedings clearly meet this standard.  The proceedings

15   were conducted pursuant to the Rules of Pleading, Practice and Procedure of the

16   Tribal Court of the Chemehuevi Indian Tribe ("Rules of Procedure"), the Rules of

17   Evidence of the Tribal Court of the Tribe ("Rules of Evidence"), the Rules of

18   Judicial Conduct Governing the Conduct of Judges of the Tribal Court of the

19   Chemehuevi Indian Tribe, the Rules of Admission and Professional Conduct

20   Governing the Practice of Attorneys in the Tribal Court of the Chemehuevi Indian

21   Tribe and the Rules Governing the Conduct of Clerks for the Tribal Court of the

22   Chemehuevi Indian Tribe. Exhibits 1-5 to the Esquerra Declaration.  The Rules of

23   Procedure and Rules of Evidence are modeled after the Federal Rules of Civil

24   Procedure.  Thus, the due process standard that the Tribal Court is required to

25   meet is the same as that applied by federal district courts.

26   A review of the Tribal Court record in *Gregory F. Mullally v. Jacques*

27   *Vasquez, et al.*, reveals that, at every step of the Tribal Court proceedings,

28   Mullally was provided with notice, the opportunity to present the Tribal Court

with evidence and argument in support of his claims, and the opportunity to be represented by legal counsel of his choice (an opportunity he chose not to exercise). Those filings leave no doubt that Mullally had a full and fair opportunity to present any and all arguments he had to the Tribal Court in opposition to the motion.

The Tribal Court records also make it clear that Mullally's claims were heard by an impartial tribunal.  The Tribal Court's Opinion and its Judgment reveal that the Court carefully considered each of Mullally's claims and arguments, the factual evidence presented in the case,  and the applicable law on each question, and reached conclusions that were unquestionably based on a reasonable interpretation of the facts and the law.  Unlike cases in which a tribal court has clearly demonstrated bias, such as *Bird v. Glacier Electric Cooperative Inc.*, 255 F.3d 1136 (9th Cir. 2001), there exists no basis for concluding that the Tribal Court was not impartial.

Based upon the Tribal Court record of proceedings, Mullally was afforded due process.

## C.   The Tribal Court's Ruling on Issues of Tribal Law are Binding on This Court.

The Tribal Court judgment provides a sufficient tribal law basis for dismissing the remaining claims for a number of reasons.  First, while the Tribal Court concluded that there was no specific grant of jurisdiction to the Tribal Court over the intentional interference with contract  claim, it held, nevertheless, that the claim was barred by the Tribe's sovereign immunity.  Opinion, p. 8, Judgment p. 12.   Finally, the Tribal Court concluded, based on tribal law, that the facts alleged in the Complaint were not sufficient to state a cause of action for intentional interference with contract.  These rulings are based on tribal law, specifically, the Tribe's Tort Claims Ordinance and the Tribal Court Rules of Pleading, Practice, and Procedure.  The Supreme Court has repeatedly recognized that "tribal courts

1    are best qualified to interpret and apply tribal law." *Iowa Mutual Insurance Co. v.*
2    *LaPlante*, 480 U.S. 9, 16 (1987).  The Ninth Circuit, furthermore, has ruled, "The
3    Tribal Court's interpretation of tribal law is binding on this court." *Hinshaw v.*
4    *Mahler*, 42 F.3d 1178, 1180 (9ᵗʰ Cir. 1994).  Thus, the Tribal Court's interpretation
5    of tribal law on these issues is binding on this Court and entitled to comity.

6
7                                   **CONCLUSION**

8            The foregoing analysis reveals that Plaintiff Gregory Mullally's remaining
9    claims, as set forth in the Complaint, must be dismissed, based on the doctrine of
10   res judicata and the doctrine of comity.  The claims remaining before the Court are
11   the subject of a final adjudication on the merits by the Chemehuevi Tribal Court
12   and, thus, are barred by res judicata.  The Tribal Court also ruled that the claims
13   are barred by the Tribe's sovereign immunity.  Because the Tribal Court's decision
14   meets all of the requirements for recognition pursuant to the doctrine of comity,
15   and because the Tribal Court's interpretation of tribal law is binding on this Court,
16   the remaining claims are also barred by the Tribe's sovereign immunity.

17           The Defendants, therefore, respectfully request that the Court dismiss all of
18   the claims that remain before the Court, specifically, Mullally's Third, Fourth, and
19   Fifth Causes of Action.

20   DATED: December 10, 2010                    Respectfully submitted,

21                                               RAPPORT AND MARSTON

22                                               /s/ Lester J. Marston
                                          By:    _____
23                                               Lester J. Marston
24                                               Attorneys for Defendants

25
26
27
28