

Gregory F. Mullally
3314 Cinnamon Drive
Lake Havasu City, AZ 86406
(928) 208-9230
gmullally@hotmail.com
Pro Se

**CLERK, U.S. DISTRICT COURT**

**MAY 16 2011**

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gregory F. Mullally | ) |
|       Plaintiff | ) |
| Vs. | ) |
| | ) |
| Jacques Vasquez, a.k.a. Manual Jacques, Charles Wood, Ronald Escobar, Jackie Gordon, Jay Hill, Mary Petersen, Ve'la"aa White, Lester Marston, and Does 1 – 20. | ) |
| | ) |
|       Defendants | ) |

CASE NO: EDCV07-1626 VAP (JCRx)

FIRST AMENDED COMPLAINT FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, PROMISSORY FRAUD, AND DELIBERATE INTERFERENCE WITH CONTRACT RELATIONS

DEMAND FOR JURY TRIAL

For my First Amended Complaint against Defendants, Gregory F. Mullally (hereinafter "Plaintiff", "I", "me" or "my" state as follows:

## PARTIES

1. Plaintiff is an individual residing in the State of Arizona.

2. Upon information and belief, Jacques Vasquez is an individual residing in the State of California. He is not a member of the Chemehuevi Indian Tribe.

3. Upon information and belief, Ronald Escobar is an individual residing in the State of California. He is a member of the Chemehuevi Indian Tribe.

4. Upon information and belief, Jackie Gordon is an individual residing in the State of California. She is a member of the Chemehuevi Indian Tribe.

5. Upon information and belief, Mary Petersen is an individual residing in the State of California. She is not a member of the Chemehuevi Indian Tribe.

6. Upon information and belief, Jay Hill is an individual residing in the State of Nevada. He is not a member of the Chemehuevi Indian Tribe.

7. Upon information and belief, Lester Marston is an individual residing in the State of California. He is not a member of the Chemehuevi Indian Tribe.

8. The residences of Charles Wood and Ve'la"aa White are unknown to the Plaintiff. They are members of the Chemehuevi Indian Tribe.

9. The District Court has dismissed all causes of action against Vasquez, Escobar, Wood, White and Marston. The District Court has allowed me to file my Amended Complaint against Petersen, Gordon and Hill.

## JURISDICTION AND VENUE

10. My is a civil action for Intentional Misrepresentation, Negligent Misrepresentation, Promissory Fraud, and Intentional Interference with Contract Relations.

11. The United States District Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§1331, 1332 and 1337. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

12. Venue for my action lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b).

13. The Chemehuevi Indian Tribe has enacted a Tribal Ordinance Entitled "Limitation of Public Officials' and Employees' Liability".

14. Section 2.080 of the Limitation of Public Officials' and Employees' Liability Ordinance provides limited sovereign immunity for Tribal Officers, Elected Officials and Tribal Employees *except as other* (sic) *provided by*

*Ordinance* (emphasis added).

15. Section 2.090 of the Chemehuevi Limitation of Public Officials' and Employees' Liability Ordinance provides that Tribal Officers, Elected Officials and Tribal Employees shall have the right to assert the defense of sovereign immunity from suit to any lawsuit brought against them resulting from the Tribal Officials, Officers, or Employees carrying out or performing their duties or obligations of their office, position, or employment with the Tribe.

16. In the case of Intentional Torts, the Chemehuevi Indian Tribe has clearly given a specific waiver of sovereign immunity for Tribal Officers, Elected Officials and Tribal Employees.

17. Section 2.100 of the Limitation of Public Officials' and Employees' Liability Ordinance states "Notwithstanding any other provisions of my Ordinance to the contrary, a Tribal Official, Officer, or Employee is liable to a plaintiff for any act or omission which constitutes an intentional tort including, but not limited to, assault, battery, sexual harassment, sexual battery, defamation, and intentional infliction of emotional distress, *even if the act or omission constituting the intentional tort arose from and was directly related to the Tribal Official's Officer's, or Employee's performance of his or her official duties or within the course and scope of their employment* (emphasis added).

18. The Chemehuevi Indian Tribe has also given a specific waiver of sovereign immunity for tort claims under the terms of the Gaming Compact entered into between the Tribe and the State of California. This waiver may be found at Section 10.2(d) of that Compact.

19. Plaintiff has fully complied with the principals of "Tribal Exhaustion" in this matter.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20. The Chemehuevi Tribe owns the Havasu Landing Casino, situated on the Chemehuevi Indian reservation in San Bernardino County, California. The Casino offers approximately two hundred and forty (240) slot machines, six (6) live gambling table games, a restaurant and a bar. It also offers live entertainment.

The Casino actively directs its marketing effort to non-Indians. The great majority of the Casino patrons are non-Indians who come from outside the Chemehuevi reservation. The Casino operates an hourly 100-passenger boat that brings patrons from Lake Havasu City, Arizona to the Casino.

The Tribe does not contract with an outside management company to operate the Casino. With the notable exception of the position of current General Manager, non-Indians hold nearly all of the key management as well as most other positions.

The Casino operates pursuant to the Indian Gaming Regulatory Act of 1988 (IGRA) as well as a Tribal-State Compact (hereinafter "the Compact") between the Tribe and the State of California that became effective on May 16, 2000.

21. On or about July 1, 2002 Plaintiff went to work at the Havasu Landing Casino. Although Plaintiff was originally hired as a Shift Manager, he was soon appointed to an additional position of Slot Manager.

22. Plaintiff was required by Section 6.4 of the Compact to hold a gaming license issued by the Chemehuevi Tribal Gaming Authority. By operation of law, my license expired every two years, and was subject to automatic renewal. Plaintiff's most recent license was not automatically renewed, so expired on or about July 1, 2007. Plaintiff was not notified by the gaming commission that they had not automatically renewed my license as they had done on at least two

previous occasions.

23. On September 16, 2007 Plaintiff was working in the Casino as Shift Manager. At approximately 3:25 P.M. Ve'la'aa White, a member of the Chemehuevi Gaming Commission and Manuel Jacques, the Casino Security Manager approached Plaintiff while he was in the 21 Pit and asked that he accompany them to the Casino office. Upon reaching the office Ms. White asked Plaintiff for my (expired) employee's badge.

24. Ms. White gave Plaintiff an Order to Show Cause commanding me to appear on September 28, 2007 and explain to the Chemehuevi Gaming Commission why they should not renew my Gaming License. Mr. Jacques collected Plaintiff's shift keys, told me the boat had been held for me, and ordered me to leave the Casino.

25. Neither the Chemehuevi Gaming Commission nor the Casino Security Department has any authority over personnel matters. Although Plaintiff could not return to work until I renewed my license, I was still employed by the Casino.

26. On September 17, 2007 Plaintiff visited his Physician who diagnosed me with a medical condition and placed me on a two-week medical leave of absence. Since Plaintiff had been ordered by his Physician not to work, I asked for and received a Continuance to the OSC.

27. On or about October 1, 2007 Plaintiff's Physician determined that my medical condition had not improved and placed me on medical disability for six months.  Plaintiff contacted Mary Petersen, HR Director for the Casino, informed her of my new diagnosis, and requested that she send me the paperwork so I might apply for vacation and sick leave, and FMLA leave when my vacation and sick leave was exhausted. Plaintiff then filed for disability with the State of California

and with my private insurance carrier, Colonial Insurance, the official supplementary insurance carrier for employees at the Casino. The Casino had paid the premiums for this Colonial disability policy on my behalf as part of my compensation package and deducted regular premiums for State disability insurance from Plaintiff's paycheck.

28. Ms. Petersen sent a letter to Plaintiff certifying me for FMLA leave. Petersen's letter contained a form that was to be filled out by Plaintiff's Physician and returned to her. She also sent me another form so that I might take my accrued sick and vacation leave prior to going on FMLA leave. At the time, Plaintiff had approximately 84 hours of accrued sick leave as well as 48 hours of accrued vacation leave.

29. Plaintiff's doctor completed the FMLA form and sent it to Ms. Petersen. I completed the sick leave and vacation form and returned it to Ms. Petersen as well.

30. Plaintiff exhausted all of my accrued sick leave and vacation leave on or about October 14, 2007. Plaintiff expected my FMLA to commence the next day.

31. At the OSC hearing Plaintiff decided that he would not submit a new application for a new Tribal Gaming License as the submission of a new application had never been required of him or any other casino employee. I premised my decision on the fact that the Gaming Commission had always automatically renewed my license, should have automatically renewed my license before its latest expiration date, and that no licensee had ever been required to re-apply for a license. I believed that he was being singled out and discriminated against.

32. On or about October 29, 2007 Jackie Gordon called Plaintiff and told me that she had not approved me for FMLA as my request was "ridiculous".

33. On or about November 1, 2007 Jackie Gordon terminated Plaintiff.

34. On December 6, 2007 Plaintiff filed a complaint against Havasu Landing Casino, Jackie Gordon, Manual Jacques and Mary Petersen in the United States District Court for the Central District of California alleging Violation of Family and Medical Leave Act of 1993, Defamation, Deliberate Interference with Contract and Conversion.

35. On January 18, 2008 Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the alternative for Summary Judgment.

36. On March 3, 2008 my Court granted part and denied part of Defendants' First Motion to Dismiss. Specifically, the Court dismissed claims against the Havasu Landing Casino and Jackie Gordon for lack of subject matter jurisdiction. The Court denied Defendant's Motion to Dismiss with respect to Plaintiff's claims of defamation, intentional interference with economic relations and conversion against Manual Jacques, Mary Petersen and unnamed Doe Defendants. The Court stayed those claims based on considerations of comity and so that Plaintiff might exhaust my Tribal remedies.

37. Subsequent to the Court's stay, on March 10, 2008 Plaintiff filed a claim with the Chemehuevi Tribal Council. Plaintiff claimed four specific causes of action. These included:

A. A claim against Manual Jacques for maliciously creating and circulating a Memo about Plaintiff that he knew to be false in violation of Section 45 of the California Civil Code.

B. A claim against Mary Petersen for deliberately interfering with the private disability policy that Plaintiff had purchased from Colonial Insurance (the official supplemental insurance carrier of the Havasu Landing Casino) by refusing

to file the paperwork required by them so that Plaintiff might make claim under that policy.

C. A claim against Jackie Gordon for deliberately interfering with Plaintiff's disability policy with Colonial Insurance (the official supplemental insurance carrier of the Havasu Landing Casino) by refusing to file the paperwork required by them so that Plaintiff might make claim under that policy.

D. A claim against Lester Marston for deliberately converting my property.

38. On June 5, 2008 Marston prepared a resolution to be acted upon by the Tribal Council regarding Plaintiff's Claims. On June 17, 2008 Marston reviewed and revised his memo regarding rejection of Plaintiff's claims, then submitted it to the Tribal Council for action.

39. After the Chemehuevi Tribal Council rejected Plaintiff's claim on or about June 28, 2008, Marston drafted a letter for the Council to use in denying Plaintiff's claim under the Tribe's Tort Claims Ordinance. After authoring his document, Marston transmitted it to Wood and Escobar for their signature.

40. On July 21, 2008, Plaintiff received the letter from the Chemehuevi Tribal Council rejecting my claim, so Plaintiff filed a Motion for Relief from Stay with this Court. Plaintiff had previously filed a Motion to Amend.

41. On August 22, 2008 this Court denied Plaintiff's Motion for Relief from Stay and denied as moot Plaintiff's Motion for leave to file an Amended Complaint. The basis of that denial was that Plaintiff had not litigated these matters in Tribal Court.

42. In preparation for filing in Tribal Court, on August 28, 2008 Plaintiff filed a second set of Claims with the Chemehuevi Tribal Council, and then amended that second claim on September 15, 2008. These claims included:

A. First Cause of Action – Plaintiff made Claim against Jacques Vasquez, which is Manuel Jacques' real name, for libel in violation of Section 45 of the California Civil Code. This was an intentional tort that Plaintiff believed Vasquez committed against me.

B. Second Cause of Action – Plaintiff made Claim against Mary Petersen for Intentional Interference with Contractual Relations. This was an intentional tort Petersen had committed against me.

C. Third Cause of Action – Plaintiff made Claim against Jackie Gordon for Intentional Interference with Contractual Relations. This was an intentional tort that Gordon had committed against me.

D. Forth Cause of Action – Plaintiff made a Claim against Lester Marston for deliberately depriving me with the use of personal property (Conversion).

E. Fifth Cause of Action – Plaintiff made Claim against Jackie Gordon for Promissory Fraud and Intentional Misrepresentation.

F. Sixth Cause of Action – Plaintiff made Claim against Mary Petersen for Promissory Fraud and Intentional Misrepresentation.

G. Seventh Cause of Action – Plaintiff made Claim against Ve'la'aa White for deliberately depriving me with the use of personal property.

H. Eighth Cause of Action – Plaintiff made Claim against Jay Hill for Promissory Fraud and Intentional Misrepresentation.

43. On or about October, 14, 2008 Plaintiff noticed that in a footnote to the Chemehuevi Indian Tribe's undated Notice of Denial of Claim, there were two totally untrue and libelous statements. These included references to Plaintiff's "criminal background" and to "considerable amounts of pornographic material" that was allegedly found and removed from Plaintiff's office at the Havasu

Landing Casino.

44. On October 14, 2008 Plaintiff wrote a letter to Wood and Escobar, the Tribal Officials who had signed the Denial. Plaintiff asked for an apology as both of these statements were totally untrue and without any merit whatsoever, but received no apology from either Wood or Escobar. Plaintiff later learned that Lester Marston authored these libelous statements, and then transmitted the document containing those libelous statements to Wood and Escobar for their signatures.

45. The Tribal Council rejected all my new Causes of Action.

46. On March 27, 2009 I filed a Complaint for Defamation, Deliberate Interference with Contract, Fraud and Conversion against Jacques Vasquez a.k.a. Manuel Jacques, Charles Wood, Ronald Escobar, Jackie Gordon, Jay Hill, Mary Petersen, Ve'la'aa White, and Lester Marston in the Chemehuevi Tribal Court.

47. Les Marston accepted service on behalf of Vasquez, Wood, Escobar, Gordon, Petersen and myself. Jay Hill was personally served. I was unable to locate White.

48. On or about June 2, 2009 I filed an Application and Affidavit for Entry of Default Judgment Against Defendant Hill as he had not filed an answer to my complaint. The Clerk rejected the Application for form, although she did not specifically identify what the problems were. I re-filed on June 18, 2009. She again rejected it as she (wrongly) claimed I had not attached a Certificate of Service to Marston.

49. On July 20, 2008 I filed my Motion for the third time.

50. From my billing records, I was to learn that the Clerk and Marston were conducting Ex Parte conversations regarding my Motion of Default. On June 9,

2009 Marston conducted a 25-minute telephone conference with the Clerk regarding the rejection of my request for entry of a Clerk's default against Hill. Marston also sent several e-mails to Hill advising me to get a lawyer and file an answer or other responsive pleading.

51. On June 12, 2009 Marston reviewed, revised, and then called the Clerk to discuss a draft of the letter the Clerk wanted to send to me rejecting my request for filing an entry of default against Hill. On June 25, 2009 Marston conducted yet another Ex Parte conversation with the Clerk about my June 18 application. Additionally, Marston conducted an Ex Parte conversation on June 29, 2009 with Chemehuevi Tribal Judge Moeller regarding my request for a Clerk's entry of a default against Hill and reviewed with me my Motion for Entry of Default Judgment, my Declaration in support of the Motion and my proposed Order.

52. Although I filed a Motion for Entry of Default third time, I did not receive a certified copy from the Clerk showing that my Motion had ever been filed. I was to later learn that the Clerk of Court never did file my Motion for a Clerk's Entry of Default until November 6, 2009, some three months after I filed the document. She did not respond to my multiple subsequent communications, both by registered letter and telephone, asking her to file the default.

53. The Clerk also refused to provide me with a docket sheet or subpoenas so that I might start taking depositions.

54. After numerous e-mails, Marston convinced Hill to let him provide his legal representation. Only after Hill had agreed to Marston's representation was my Motion for Default addressed. Marston filed a response on behalf of Hill on October 18, 2009. The Judge denied my Motion for Summary Judgment on January 19, 2010, noting that Hill had "responded" and that I had not requested

that the Clerk to enter a Default as per the Rules (even though the Judge, the Clerk and Marston conducted numerous Ex Parte communications about that very request).

55. On January 28, 2010 Marston filed numerous documents with the Tribal Court. These included:

A) Defendant's Notice of Motion and Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment.

B) Memorandum of Points and Authorities in Support of Motion.

C) Statement of Uncontroverted Facts.

D) Declaration of David Bartlett.

E) Declaration of Ronald Escobar.

F) Declaration of Jacqueline Gordon.

G) Declaration of Jay Hill.

H) Declaration of Manuel Jacques.

I) Declaration of Lester Marston.

J) Declaration of Mary Petersen

K) Declaration of V'La"aa White

L) Proposed Order Granting Defendants' Motion to Dismiss.

56. On March 1, 2010 the Chemehuevi Tribal Court held a hearing on the Motion. It appears that the Court issued and Opinion and Order granting Summary Judgment on March 23, 2010. I use the word "appears" as the Clerk did not transmit a copy of that Opinion and Order to me, and I did not find out that a decision had been rendered until the second week of July, when a copy of Marston's Motion asking for slightly more than $132,000.00 in legal fees was forwarded to me. A hearing on my fee Motion was set for July 30, 2010.

57. When I received Marston's Motion I was in Pittsburgh, Pennsylvania and unable to return to Arizona until mid-August. I had no access to my computer or to any of the documents that I had filed in the case, nor did I have access to the Tribal Ordinances or Codes dealing with attorney's fees. Further, I hadn't even seen the Opinion and Order granting Summary Judgment.

58. On July 12, 2010 I filed a Request for a Continuance. I included in my Motion the above facts, asking for a Continuance only until the first of September. I also wrote the Clerk asking for her to forward me a copy of the Opinion and Order so that I might respond in some meaningful way to Marston's Motion. In that same letter I asked her for copies of the Tribal Ordinances, the address of the Appeals Court, a copy of the docket sheet, and the location of prior decisions and precedent from the Chemehuevi Court.

59. Once again, the Clerk completely ignored my requests and did not respond in a timely fashion.

The Court also issued a one-word ("Denied") rejection of my Motion for a continuance.

60. On July 26, 2010 I called the Clerk and asked her for the Court's telephone number so that I might at least make an appearance by telephone. She told me that she would "have to get back to me".

61. By Thursday, July 29, I still didn't have a phone number so I sent a Federal Express letter to the Clerk and the Court, noting once again that I had yet to receive a copy of the Opinion and Order that was to be the basis for the hearing the following day nor had I received a phone number so I could participate. As my first request for a continuance had been denied, I filed a second (Emergency) Request for a Continuance. I have no idea whether or not the Court acted upon that

1   request, but I assume it didn't as the fee hearing went forward without me.

2       62. On or about August 4, some five days after the hearing, I heard from the

3   Clerk. She sent me a copy of the Order and Opinion, wherein the Tribal Court had

4   dismissed my First Cause of Action (Defamation) against Jacques, my Second

5   Cause of Action (Defamation) against Wood and Escobar, and my fifth Cause of

6   Action (Conversion) against Marston and White. The Tribal Court found that it did

7   not have jurisdiction to hear my Third Cause of Action (fraud claims against

8   Gordon, Hill and Petersen) or my Fourth Cause of Action (intentional interference

9   with contractual relations against Gordon and Petersen).

10       63. The Clerk also included a post-it note with the telephone number I might

11   call to participate in the fee hearing. Unfortunately for me, the hearing was long

12   past.

13       64. On September 9, 2010, I filed an ex parte motion to reopen the case,

14   which the Court granted on September 22, 2010. I filed a Motion to Amend on

15   November 15, 2010, seeking leave to file a first amended complaint with the

16   following claims: (1) defamation against Jacques and Gordon; (2) defamation

17   against Wood, Escobar, and Marston, (3) intentional interference with contractual

18   relations against Peterson and Gordon; (4) intentional misrepresentation against

19   Petersen, Gordon, and Hill; (5) promissory fraud against Petersen, Gordon, and

20   Hill; and (6) conversion against Marston and White. The same day, I also filed a

21   memorandum of points and authorities and the declaration of Plaintiff Gregory

22   Mullally in support of the Motion to Amend.

23       65. On November 19, 2010, Defendants filed opposition to the Motion and

24   three declarations from Marston. On December 7, 2010, I filed a declaration in

25   response to Defendants' opposition to the Motion to Amend.

66. On December 6, 2010, the Court ordered supplemental briefing as to whether the Tribe has established appellate review of Tribal Court decisions. On December 10, 2010, I filed a Brief in Response to the Court's December 6, 2010, Minute Order. On December 13, 2010, Defendants filed a Supplemental Brief and the declaration of Lester J. Marston in support of the Supplemental Brief .On December 14, 2010, Defendants filed a motion to dismiss for lack of jurisdiction set for hearing on January 24, 2010.

The same day, Defendants also filed a memorandum in support of the Motion to Dismiss, the declaration of Irene Esquerra with Exhibits 1 through 46 attached and the declaration of Ronald Escobar with Exhibits 1 through 7 attached.

67. On January 10, 2011, I filed a response to the Motion to Dismiss with Exhibit 1 attached a memorandum of points and authorities in support of the Opposition.

68. On January 19, 2011, Defendants filed a Reply the declaration of Christine Feller the declaration of Irene Esquerra with Exhibits 1 and 2 attached.

69. On January 21, 2011, I filed a Supplement to the Opposition.

70. On May 4, 2011, the District Court granted my Motion to Amend, in part, as to my proposed claims for intentional interference with contractual relations against Petersen and Gordon, intentional misrepresentation against Petersen, Gordon and Hill, and promissory fraud against Petersen, Gordon and Hill.

### FIRST CAUSE OF ACTION

(Intentional Interference With Contractual Relations –

Mary Petersen, Jackie Gordon)

71. Plaintiff by my reference incorporates each of the preceding paragraphs

as if set forth in full.

72. As part of my compensation package, Havasu Landing Casino paid for my private disability insurance policy with Colonial Insurance, the insurance carrier officially recognized by the Casino.  Plaintiff had a contractual relationship with Colonial Insurance.

73. After Plaintiff's doctor certified me for Medical disability, I attempted to make claim against my private disability policy with Colonial Insurance.

74. Since it was part of Plaintiff's compensation package, Jackie Gordon as Casino General Manager and Mary Petersen as Personnel Director both knew of the disability policy and Plaintiff's contractual relationship with Colonial.

76. Mary Peterson, under the direction of Jackie Gordon, refused to submit the paperwork required by Colonial Insurance so I might collect under my policy. Each intended to disrupt my ability to collect under my contract.

77. Plaintiff asked Petersen on multiple occasions, both by certified letter and e-mail, to file the necessary paperwork. She responded to me with an e-mail stating that she was refusing to complete the forms because she was "only following orders".

78. By refusing to file and/or directing that the required paperwork not be filed, Petersen and Gordon intentionally intended to impede performance, attempted to induce a breach or disrupt the contractual relationship between Plaintiff and my insurance company, and made Plaintiff's attempts to collect under my policy extremely difficult.

79. Petersen finally submitted the paperwork required by Colonial Insurance some eight months after Plaintiff had requested that she do so.

80. Because she refused to submit the required paperwork to Colonial

Insurance, I was denied the benefits I should have received under my disability policy for many months. Since I was unable to work because of my ongoing medical condition, and because of the actions of Petersen and Gordon Plaintiff suffered grave financial hardship. I was forced to rely on the kindness of friends to obtain funds to help me pay my medical and other expenses.

81. As a proximate result of my action by Mary Peterson and Jackie Gordon Plaintiff suffered harm and damages, the exact amount to be determined at trial.

## SECOND CAUSE OF ACTION

(Intentional Misrepresentation – Mary Petersen, Jackie Gordon, Jay Hill)

82. Plaintiff by reference incorporates each of the preceding paragraphs as if set forth in full.

83. Mary Petersen, Jackie Gordon, Jay Hill each represented to Plaintiff that he was covered under the provisions of the Family and Medical Leave Act of 1993 (FMLA). Both Hill and Gordon discussed FLMA leave as part of the Employee Handbook orientation presentation each made. Under the direction of Gordon and Hill, Petersen posted printed notices in the employee's break room and other places that outlined employee rights under FMLA. When the "new" employees handbook was adopted, Petersen personally discussed the provisions of the Employee Handbook with me. I was required to sign a document entitled Acknowledgement of Orientation and Understanding" stating that I had received orientation and a copy of the "Havasu Landing Casino Policies and Procedures" as set forth (in the Employee handbook), and that I had been give a copy of my job description.

84. FMLA allows eligible employees to take off up to 12 work weeks in any 12 month period for the birth or adoption of a child, to care for a family member, or if the employee themselves has serious health condition. Plaintiff was an eligible

employee as defined by the Act, and was certified by my doctor as having a serious medical condition requiring leave.

85. According to the verbal representations made by Defendants Gordon and Hill, and as outlined in the written notices posted by Petersen, I was entitled to have my benefits maintained during the leave. I had the right to return to the same or equivalent position, pay, and benefits at the conclusion of my leave.

86. As part of my employment agreement, Defendants Petersen, Gordon and Hill collectively and severally represented to Plaintiff that I would be given FMLA if he required such leave.

87. Defendants Petersen, Gordon and Hill representation to Plaintiff was false.

88. Defendants Petersen, Gordon and Hill knew that the representation was false when each made it, or that each made the representation recklessly and without regard for its truth.

89. Defendants Petersen, Gordon and Hill intended Plaintiff to rely on their representation to my detriment.

90. Plaintiff reasonably relied on Petersen, Gordon and Hill's representations that he was covered under the provisions of FMLA, but was denied such coverage when he needed and qualified for it.

91. As a proximate result of Defendant reasonably reliance on Petersen's, Gordon and Hill's false representations, Plaintiff was harmed. Plaintiff's reliance on Petersen, Gordon and Hill's representations was a substantial factor in causing Plaintiff's harm.

92. Plaintiff has suffered damages in an amount greater than $100,000.00, the exact amount to be proven at trial.

## THIRD CAUSE OF ACTION

(Negligent Misrepresentation – Mary Petersen, Jackie Gordon, Jay Hill)

93. Plaintiff by reference incorporates each of the preceding paragraphs as if set forth in full.

95. When Mary Petersen, Jackie Gordon, Jay Hill each represented to Plaintiff that he was covered under the provisions of the Family and Medical Leave Act of 1993 (FMLA) they had no reasonable grounds for believing their representations to be true, and this representation was in fact not true.

96. When Hill and Gordon directed Petersen to post printed notices in the employee's break room and other places that outlined employee rights under FMLA, they had no reasonable grounds to believe those notices accurately reflected employee rights, and this representation was in fact not true.

97. When Petersen posted printed notices in the employee's break room and other places representing employees rights under FMLA, she had no reasonable grounds to believe those notices accurately reflected employee rights, and that employees of Havasu Landing Casino had any rights under FMLA, and these representations were in fact not true.

98. When Petersen, Hill and Gordon discussed the medical leave provisions of the employee's handbook with me, they had no reasonable grounds to believe I had any rights to FMLA, and their representations were in fact not true.

99. When Defendants Petersen, Gordon and Hill made verbal representations to me that I was entitled to have my benefits maintained during FMLA medical leave, and that I had the right to return to the same or equivalent position, pay, and benefits at the conclusion of my leave, they had no reasonable grounds to believe that these representations were true, and should have known that FMLA and its

provisions did not apply to Indian tribes, and their representations were in fact not true.

100. When Defendants Petersen, Gordon and Hill individually and collectively represented to me that I would be given FMLA if I required such leave, they should have know that these representations were false, and their representations were in fact not true.

101. Defendants Petersen, Gordon and Hill intended Plaintiff to rely on their negligent representation to my detriment.

102. Plaintiff reasonably relied on Petersen, Gordon and Hill's negligent representations that he was covered under the provisions of FMLA, but was denied such coverage when he needed and qualified for it.

103. As a proximate result of Defendant reasonably reliance on Petersen's, Gordon and Hill's negligent representations, Plaintiff was harmed. Plaintiff's reliance on Petersen, Gordon and Hill's untruthful representations was a substantial factor in causing Plaintiff's harm.

104. Plaintiff has suffered damages in an amount greater than $100,000.00, the exact amount to be proven at trial.

### FOURTH CAUSE OF ACTION

(Promissory Fraud – Mary Petersen, Jackie Gordon, Jay Hill)

105. Plaintiff by my reference incorporates each of the preceding paragraphs as if set forth in full.

106. Mary Petersen gave an orientation to Plaintiff wherein she promised that FMLA leave was available to Plaintiff.

107. Jay Hill, as the General Manager of the Havasu Landing Casino, conducted personnel sessions with all Casino employees, including Plaintiff,

wherein he explained the subjects contained in the Havasu Landing Casino Policies and Procedures manual. Hill promised that FMLA leave was available to casino employees. On information and belief, Hill granted FMLA leave to some employees.

108. Jackie Gordon, as the General Manager of the Havasu Landing Casino, conducted personnel sessions with all Casino employees, including Plaintiff, wherein she explained the subjects contained in the Havasu Landing Casino Policies and Procedures manual. Gordon promised that FMLA leave was available to casino employees. On information and belief, Gordon granted FMLA leave to some employees.

109. Gordon and Hill were responsible for directing Mary Petersen in the performance of her duties.

110. As part of her duties and under the direction of Gordon and Hill, Petersen placed posters in the employee's break room and other places outlining employee's rights under FMLA.

111. The promise of Family Medical Leave, as well as the other promises contained within the Havasu Landing Casino Policies and Procedures publication, was important to Plaintiff in convincing me to accept my position with the Casino. Had Plaintiff any reason to believe that some of the promises contained in that publication were false, he most certainly would have questioned all of the promises contained therein.

112. When Petersen, Hill and Gordon promised Plaintiff that Family Medical Leave was available to me, they did not intend to keep that promise.

113. Petersen, Hill and Gordon intended that Plaintiff rely on the promise that Family Medical Leave was available to me should I need it.

114. Plaintiff reasonably relied on Petersen, Hill and Gordon's promise that Family Medical Leave was available to me should he need it.

115. Petersen, Hill and Gordon did not perform as they had promised. Petersen and Gordon specifically denied Family Medical leave to Plaintiff.

116. As a proximate cause of Petersen, Hill and Gordon's failure to keep their promise to Plaintiff, Plaintiff suffered harm, and Plaintiff's reliance on their promise was a substantial contributing factor.

117. As a result of Petersen, Hill and Gordon's tortuous Promissory Fraud, Plaintiff has been damaged in an amount greater than $100,000.00, the exact amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an entry of judgment and other relief in my favor as follows:

118. An award of compensatory damages against Mary Petersen for Intentional Interference with Plaintiff's Contractual Relations, the exact amount to be proven at trial; and,

119. An award of punitive damages against Mary Petersen for Intentional Interference with Plaintiff's Contractual Relations, the exact amount as may be deemed appropriate by the Court; and,

120. An award of compensatory damages against Jackie Gordon for Intentional Interference with Plaintiff's Contractual Relations, the exact amount to be proven at trial; and,

121. An award of punitive damages against Jackie Gordon for Intentional Interference with Plaintiff's Contractual Relations, the exact amount as may be deemed appropriate by the Court; and,

122. An award of compensatory damages against Mary Peterson for Intentional Misrepresentation (Fraud), the exact amount to be proven at trial; and,

123. An award of punitive damages against Mary Petersen for Intentional Misrepresentation (Fraud), the exact amount as specified by statute and as deemed appropriate by the Court; and,

124. An award of compensatory damages against Jay Hill for Intentional Misrepresentation (Fraud), the exact amount to be proven at trial; and,

125. An award of punitive damages against Jay Hill for Intentional Misrepresentation (Fraud), the exact amount as specified by statute and as deemed appropriate by the Court; and,

126. An award of compensatory damages against Jackie Gordon for Intentional Misrepresentation (Fraud), the exact amount to be proven at trial; and,

127. An award of punitive damages against Jackie Gordon for Intentional Misrepresentation (Fraud), the exact amount as specified by statute and as deemed appropriate by the Court; and,

128. An award of compensatory damages against Mary Peterson for Negligent Misrepresentation, the exact amount to be proven at trial; and,

129. An award of compensatory damages against Jay Hill for Negligent Misrepresentation, the exact amount to be proven at trial; and,

130. An award of compensatory damages against Jackie Gordon for Negligent Misrepresentation, the exact amount to be proven at trial; and,

131. An award of compensatory damages against Mary Peterson for Promissory Fraud, the exact amount to be proven at trial; and,

132. An award of punitive damages against Mary Petersen for Promissory Fraud, the exact amount as deemed appropriate by the Court; and,

133. An award of compensatory damages against Jay Hill for Promissory Fraud, the exact amount to be proven at trial; and,

134. An award of compensatory damages against Jackie Gordon for Promissory Fraud, the exact amount to be proven at trial; and,

135. An award of punitive damages against Jackie Gordon for Promissory Fraud, the exact amount as deemed appropriate by the Court; and,

136. An award of costs as provided by Statute and/or by other applicable law against all Defendants.

137. For such other and further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all issues so triable.


RESPECTFULLY SUBMITTED this ___17th___ day of May, 2011.


_____
Gregory F. Mullally
3314 Cinnamon Drive
Lake Havasu City, AZ 86406
(928) 208-9230
gmullally@hotmail.com
Pro Se

1

## CERTIFICATE OF SERVICE

2   I hereby certify that on May _____ \0 ____, 2011 I personally served a copy of

3   Plaintiff's Proposed Amended Complaint on the party listed below by placing a

4   true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid,

5   in the United States mail at Lake Havasu City, AZ to the party listed below:

6

7   Lester J. Marston
    Rapport and Marston
8   P. O. Box 488
9   Ukiah, CA 95482

10

11   _____

12   Gregory F. Mullally
     3314 Cinnamon Drive
13   Lake Havasu City, AZ 86406
     (928) 208-9230
14   gmullally@hotmail.com
     Pro Se

15

16

17

18

19

20

21

22

23

24

25



3314 Cinnamon Drive
Lake Havasu City, AZ 86406

RECEIVED
CLERK, U.S. DISTRICT COURT

MAY 1 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Clerk of Court
3470 Twelfth Street
Riverside, CA 92501

U.S. POSTAGE
PITTSBURGH, PA
152XX
MAY 13 '11
AMOUNT
$3.28
00020557-15