1

2

3                                                              O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  GREGORY F. MULLALLY,        )   Case No. EDCV 07-01626-VAP
                                )   (JCRx)
12              Plaintiff,      )
                                )   **ORDER GRANTING DEFENDANTS'**
13      v.                      )   **MOTION FOR SUMMARY JUDGMENT**
                                )
14  HAVASU LANDING CASINO,      )
    et al.,                     )   **[Motion filed on October 25,**
15                              )   **2012]**
                Defendants.     )
16  _____  )

17

18      Before the Court is (1) a Motion for Summary Judgment

19  (Doc. No. 130) ("Motion") filed by defendants Jacqueline

20  Gordon and Mary Petersen ("Defendants") against Plaintiff

21  Gregory F. Mullally ("Plaintiff"); and (2) a Request for

22  Continuance Pursuant to Rule 56(f) until the Magistrate

23  Judge rules on Plaintiff's Motion to Compel, filed by

24  Plaintiff ("Request").

25

26  **I.   MOTION FOR SUMMARY JUDGMENT**

27          **A.   Background**

28

1    This action arises from an employment dispute at
2  Havasu Landing Casino ("Casino"), relating to Plaintiff's
3  termination and entitlement to leave and other benefits.
4  The lengthy procedural history in this case is described
5  at length in the Court's May 4, 2011, Minute Order (see
6  Doc. No. 83) and the Court's September 8, 2011, Minute
7  Order (see Doc. No. 99).

8

9    As to the procedural background relevant to this
10  Motion, on May 16, 2011, Plaintiff filed a first amended
11  complaint ("FAC") asserting claims for (1) intentional
12  interference with contractual relations against
13  defendants Petersen and Gordon; (2) intentional
14  misrepresentation against defendants Petersen, Gordon,
15  and Jay Hill; (3) negligent misrepresentation against
16  Peterson, Gordon, and Hill; and (4) promissory fraud
17  against Petersen, Gordon, and Hill.  (Doc. No. 84.)

18

19    On September 8, 2011, the Court granted in part and
20  denied in part the motion to dismiss filed by Defendants.
21  Specifically, the Court: (1) denied the motion to dismiss
22  as to Plaintiff's first claim for intentional
23  interference with contractual relations; and (2)
24  dismissed Plaintiff's second claim for intentional
25  misrepresentation, third claim for negligent
26  misrepresentation, and fourth claim for promissory fraud,
27  all without leave to amend.  (Doc. No. 99.)  Therefore,

28

the only claim left to adjudicate in this case -- and the claim at issue in this Motion -- is Plaintiff's first claim for intentional interference with contractual relations against defendants Gordon and Petersen (the "Interference Claim").

On October 25, 2012, Defendants filed a Motion for Summary Judgment (Doc. No. 130), the Declaration of Jackie Gordon (Doc. No. 130-1) ("Gordon Declaration"); the Declaration of Mary Petersen (Doc. No. 130-2) ("Petersen Declaration"); the Declaration of Lester J. Marston (Doc. No. 130-3) ("Marston Declaration") with Exhibits A through B (Doc. Nos. 130-4 to 130-5); the Declaration of Felicia Robinson (Doc. No. 130-6) ("Robinson Declaration") with Exhibits 1 through 8 (Doc. Nos. 130-7 to 130-14); and a proposed statement of uncontroverted facts (Doc. No. 130-15).

On November 7, 2012, Plaintiff filed his opposition to the Motion (Doc. No. 136) ("Opposition"), and the Declaration of Gregory F. Mullally (Doc. No. 141) ("Mullally Declaration") with Exhibits A through Q. Also, on November 7, 2012, Plaintiff filed a Request for Continuance Pursuant to Rule 56(f) until the Magistrate Judge rules on Plaintiff's Motion to Compel testimony and production of documents from Defendants. On November 9, 2012, at the Court's direction, Defendants filed a

Statement of Undisputed Facts (Doc. No. 142) ("SUF").  On
November 15, 2012, Plaintiff filed his opposition to
Defendants' statement of undisputed facts (Doc. No. 146)
("SUF Opp.").

     On November 30, 2012, the Magistrate Judge ruled on
Plaintiff's Motion to Compel (Doc. No. 133), and ordered
1) Defendants to re-produce to Plaintiff all documents
which were intended to be previously produced; 2)
defendant Petersen to answer the question in her
deposition as sought by Plaintiff; and 3) that Plaintiff
be allowed to take the deposition of Defendants'
information technology technician, David Bartlett.  (<u>See</u>
Doc. No. 153.)

     On December 3, 2012, Defendants filed their Reply
(Doc. No. 150) ("Reply"); the Supplemental Declaration of
Lester J. Marston (Doc. No. 150-1) ("Marston Declaration
II") with Exhibit A (Doc. No. 150-2); and the
Supplemental Declaration of Mary Petersen (Doc. No. 150-
3) ("Petersen Declaration II") with Exhibit A (Doc. No.
150-4).

     On October 14, 2012, the Court approved a joint
stipulation filed by the parties, staying discovery
pending the Court's ruling on the instant Motion.  (<u>See</u>
Doc. No. 159.)

1  **B.  Legal Standard**

2      A court shall grant a motion for summary judgment

3  when there is no genuine dispute as to any material fact

4  and the moving party is entitled to judgment as a matter

5  of law.  Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty</u>

6  <u>Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving

7  party must show that "under the governing law, there can

8  be but one reasonable conclusion as to the verdict."

9  <u>Anderson</u>, 477 U.S. at 250.

10

11      Generally, the burden is on the moving party to

12  demonstrate that it is entitled to summary judgment.

13  <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998)

14  (citing Anderson, 477 U.S. at 256-57); <u>Retail Clerks</u>

15  <u>Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030,

16  1033 (9th Cir. 1983).  The moving party bears the initial

17  burden of identifying the elements of the claim or

18  defense and evidence that it believes demonstrates the

19  absence of an issue of material fact.  <u>Celotex Corp. v.</u>

20  <u>Catrett</u>, 477 U.S. 317, 323 (1986).

21

22      Where the moving party has the burden at trial, "that

23  party must support its motion with credible

24  evidence . . . that would entitle it to a directed

25  verdict if not controverted at trial."  <u>Celotex</u>, 477 U.S.

26  at 331.  The burden then shifts to the non-moving party

27  "and requires that party . . . to produce evidentiary

28

materials that demonstrate the existence of a 'genuine issue' for trial." Id.; Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(a).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id. The burden then shifts to the non-moving party to show that there is a genuine dispute of material fact that must be resolved at trial. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the

non-moving party.  <u>Scott v. Harris</u>, 550 U.S. 372, 378,
380 (2007); <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th
Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec.</u>
<u>Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

   **C.   Uncontroverted Facts**

        Both sides cite facts that are not relevant to
resolution of the Motion.  To the extent certain facts
are not mentioned in this Order, the Court has not relied
on them in reaching its decision.  The Court finds the
following material facts are supported adequately by
admissible evidence and are uncontroverted.  They are
"admitted to exist without controversy" for the purposes
of this Motion.  L.R. 56-3; <u>see generally</u> Fed. R. Civ. P.
56.

        Plaintiff was an employee of the Casino between July
1, 2003, and November 6, 2007.  (SUF ¶ 1; SUF Opp. ¶ 1.)
On or about September 20, 2007, Plaintiff forwarded a
request for leave under the Family Medical Leave Act
("FMLA") to Petersen.  (SUF ¶ 2; SUF Opp. ¶ 2.)

        On October 31, 2007, Plaintiff forwarded a claim form
("First Claim Form") for the Colonial Life and Accident
Insurance Company ("Colonial") to defendant Petersen,
asking that she fill out the employer information section
of the form and return it to him.  (SUF ¶ 7; SUF Opp. ¶

6.)  Petersen did not immediately complete and return the employer information section of the First Claim Form submitted to her by Plaintiff.  (SUF ¶ 8.)

On November 7, 2007, Plaintiff filed the First Claim Form with Colonial, pursuant to the Disability Insurance Policy he had with Colonial, for disability benefits for mood disorder arising from stress (the "November Claim"). (SUF ¶ 10; SUF Opp. 9.)  Plaintiff submitted with the November Claim a cover letter stating that representatives of the Casino refused to complete the employer information section of the First Claim Form. (SUF ¶ 11; SUF Opp. ¶ 10.)  On November 8, 2007, Colonial denied Plaintiff's November Claim because his condition was not covered by his disability insurance policy.  (SUF ¶ 13; SUF Opp. ¶ 11.)  Plaintiff did not inform Petersen, Gordon, or any other supervisor at the Casino that the November Claim had been denied.  (SUF ¶ 14; SUF Opp. ¶ 12.)

On November 28, 2007, Petersen faxed the completed employer information section of the Claim Form to Colonial.[1]  (SUF ¶ 16.)

_____

[1]Plaintiff disputes this fact because he is awaiting phone records from Defendants.  This fact, however, is not relevant in resolving this Motion.

On December 6, 2007, Plaintiff filed his original complaint against the Casino, Gordon, Petersen, Manual Jacques, and ten Doe defendants, asserting claims for: (1) violation of the FMLA against Gordon; (2) violation of the FMLA against Casino; (3) defamation against Jacques; (4) intentional interference with contractual relations against Petersen and Does 1-5; and (5) conversion against Does 6-10. (SUF ¶ 17-18; SUF Opp. ¶ 15; see also Doc. No. 1.)

With a knee replacement operation scheduled, Plaintiff sent a letter to Petersen on January 10, 2008, asking Petersen to fill out and return the employer information section to Colonial.[2]  (Mullaly Decl. ¶ 19; Ex. O to Mullaly Decl.)  On or about February 13, 2008, Plaintiff filed a claim form ("Second Claim Form") for disability benefits with Colonial, based on a knee operation that occurred on February 11, 2008 (the "February Claim").  (SUF ¶ 19.)  On April 8, 2008, Plaintiff sent a demand letter to Colonial informing it that his former employer would not complete the employment information section of the Second Claim Form because he has filed a lawsuit against them in federal court.  (SUF ¶ 23; SUF opp. ¶ 19.)  On or about April 9,

---

[2]Defendants allege they did not receive this letter and cannot find it in Plaintiff's file.  (Petersen Decl. II ¶¶ 4-5.)  Moreover, it is unclear whether Plaintiff sent Petersen a new claim form, or whether he was referring, in his letter, to the First Claim Form.

2008, a Colonial representative called Petersen seeking the employer information for the February Claim.[3]  (SUF ¶ 24.)  On April 9, 2008, Petersen faxed to Colonial the completed employer information section of Plaintiff's Second Claim Form.  (SUF ¶ 25; SUF Opp. 21.)  On April 9, 2008, Plaintiff was awarded benefits arising from the February Claim.  (SUF ¶ 26; SUF Opp. 21.)

**D.   Discussion**

Only a single claim remains in this case: whether defendants Gordon and Petersen intentionally interfered with Plaintiff's contractual relationship with Colonial.

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pac. Gas & Elec. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).  "To establish the claim, the plaintiff need

_____

[3]Plaintiff disputes this, arguing that the telephone call from Colonial seeking the employer information had nothing to do with the February Claim.  This is not supported by the evidence.  The telephone call is recorded by Colonial in their annotation notes for the February Claim.  (Ex. 7 to Robinson Decl.)

not prove that a defendant acted with the primary purpose of disrupting the contract, but must show the defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action."  Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).

There is no dispute that Plaintiff had a valid contract with Colonial, a third party.  There is also no dispute that Defendants had knowledge of this contract.

Plaintiff alleges that Defendants "refused to submit the paperwork required by Colonial Insurance so [he] might collect under [his] policy.  [Defendants] intended to disrupt [his] ability to collect under [his] contract."  (FAC ¶ 76.)  Plaintiff further alleges that "Petersen finally submitted the paperwork required by Colonial Insurance some eight months after Plaintiff had requested that [Petersen] do so."  (FAC ¶ 79.)  Finally, Plaintiff alleges that because Defendants refused to submit the paperwork in a timely manner, he was "denied the benefits [he] should have received under [his] disability policy for many months," which resulted in damages to Plaintiff.  (FAC ¶ 80.)

As the uncontroverted facts demonstrate, there were two claims filed by Plaintiff with Colonial: the November

Claim and the February Claim. Plaintiff's allegations --
that Defendants refused to submit the paperwork to
Colonial in a timely fashion --ostensibly conflate the
two claims.   The Court will address each claim in turn.

### 1.  November Claim

To repeat the relevant facts, on October 31, 2007,
Plaintiff forwarded a claim form ("First Claim Form") for
Colonial to defendant Petersen, asking that she fill out
the employer information section of the form and return
it to him.  (SUF ¶ 7; SUF ¶ 6.)  Defendants did not
immediately fill out the employer information section.
(SUF ¶ 8.)  On November 7, 2007, Plaintiff filed the
First Claim Form with Colonial for disability benefits
for mood disorder arising from stress, pursuant to the
Disability Insurance Policy he had with Colonial (the
"November Claim").  (SUF ¶ 10; SUF Opp. 9.)  Plaintiff
submitted with the November Claim a cover letter stating
that representatives of the Casino refused to complete
the employer information section of the First Claim Form.
(SUF ¶ 11; SUF Opp. ¶ 10.)  On November 8, 2007, Colonial
denied Plaintiff's November Claim because his condition
was not covered by his disability insurance policy.  (SUF
¶ 13; SUF ¶ 11.)

The evidence here demonstrates that at least two of
the elements of the Interference Claim are absent here.

First, there is no genuine dispute of material fact as to whether Defendants disrupted Plaintiff's contract by failing to timely submit the employer information section.  Plaintiff alleges that Defendants waited eight months before submitting the employer information, resulting in the denial of benefits.  This allegation is unsupported by the evidence.  It is undisputed that Plaintiff submitted the November Claim on November 7, 2007.  (SUF ¶ 10; SUF Opp. 9.)  It is undisputed that, the very next day -- November 8, 2007 -- the November Claim was denied for reasons unrelated to the employer information section.  Specifically, the November Claim was denied because Plaintiff's condition was not covered by his disability insurance policy.  (SUF ¶ 13; SUF ¶ 11.)  Defendants' conduct did not cause a disruption here.

Plaintiff disputes whether Petersen returned the employer information section of the First Claim Form on November 28, 2007, a fact supported by the Petersen Declaration.  Ultimately, this dispute is irrelevant. The First Claim Form was for the November Claim.  The November Claim was denied the day after it was submitted. It was denied for reasons unrelated to the employer information section.

Second, there was no resulting damage from any alleged interference.  It is undisputed that Plaintiff's November Claim was denied the very next day after it was submitted, because Plaintiff's condition was not covered by his disability insurance policy.  The denial had nothing to do with Defendants.

Accordingly, Defendants have sufficiently demonstrated that allegedly failing to return the employer information section to Colonial did not constitute an intentional interference with Plaintiff's contractual relations.

### 2.   February Claim

To repeat the relevant facts, with knee replacement operation upcoming, Plaintiff sent a letter to Petersen on January 10, 2008, asking Petersen to fill out and return the employer information section to Colonial. (Mullaly Decl. ¶ 19; Ex. O to Mullaly Decl.)  On or about February 13, 2008, Plaintiff filed a claim form ("Second Claim Form") for disability benefits with Colonial, based on a knee operation that occurred on February 11, 2008 (the "February Claim").  (SUF ¶ 19.)  On April 8, 2008, Plaintiff sent a demand letter to Colonial informing it that his former employer would not complete the Second Claim Form because he has filed a lawsuit against them in federal court.  (SUF ¶ 23; SUF opp. ¶ 19.)  On or about

April 9, 2008, a Colonial representative called Petersen seeking the employer information for the February Claim. (SUF ¶ 24.)  On April 9, 2008, Petersen faxed to Colonial the completed employer information section of Plaintiff's Second Claim Form.  (SUF ¶ 25; SUF Opp. 21.)  On April 9, 2008, Plaintiff was awarded benefits arising from the February Claim.  (SUF ¶ 26; SUF Opp. 21.)

Plaintiff's allegation that Defendants' conduct in failing to provide the employer information in a timely manner for the February Claim constituted an intentional interference with Plaintiff's contractual relations is not alleged in the FAC.  The original Complaint was filed before the February Claim was filed.  The FAC, filed on May 16, 2011, was filed after the February Claim was approved.  Neither the original Complaint nor the FAC specifically refer to either the November Claim or the February Claim.  Plaintiff, conflating the two claims, alleges that Defendants took "eight months" to submit the paperwork after Plaintiff initially requested them to do so.  That "eight month" period presumably begins in October 2007, when Plaintiff submitted the First Claim Form to Defendants for the November Claim.  That period presumably ends in April 2008, when Defendants submitted the employer information section for the February Claim. These two claims are distinct.  Plaintiff's attempt to blur and conflate the two into some larger scheme is

without support, and indicates that the original
complaint and the FAC were only referring to the First
Claim Form and the November Claim, and not the Second
Claim Form and the February Claim.

Even if, however, the FAC encompassed the allegation
that Defendants failed to respond timely by sending
Colonial the employer information for the February Claim,
Plaintiff's claim still fails.  Plaintiff submitted as
evidence a letter than he sent to Defendants on January
10, 2008.  He requested Defendants submit the employer
information section to Colonial because he faced upcoming
knee surgery, and he wanted to ensure that any future
claims would be processed expeditiously by Colonial.
After that point, however, Plaintiff did not again
contact Defendants.  In fact, in Plaintiff's April 8,
2008 demand letter to Colonial, Plaintiff states that
"[his] employer will not complete any form whatsoever, as
they are defendants in a Federal lawsuit I filed against
them."  (Ex. 5 to Robinson Decl.)

Until Defendants were contacted by Colonial on April
9, 2008, with Colonial requesting that Defendants submit
the employer information section for the February Claim,
Defendants had no way of knowing that Plaintiff had his
knee replacement surgery on February 11, 2008, and filed
the claim for this with Colonial on February 13, 2008.

As soon as Defendants became aware of the February Claim,
when they were contacted by Colonial, they immediately
returned the employer information that same day.
Accordingly, Defendants could not be found to have
intentionally acted to disrupt the contract when they did
not know that the February Claim was filed until they
were contacted by Colonial on April 9, 2008.

Accordingly, the Court GRANTS judgment in favor of
Defendants on Plaintiff's intentional interference with
contractual relations claim.

## II. Request for Continuance

Plaintiff requests a continuance pursuant to FRCP
56(f) until the Magistrate Judge has the opportunity to
rule on Plaintiff's Motion to Compel testimony and
production of documents from the Defendants.  The
Magistrate Judge ruled on Plaintiff's Motion to Compel
and issued an order on November 30, 2012, compelling
certain discovery.  The parties stipulated to stay that
discovery until resolution of Defendants' summary
judgment motion.  Accordingly, Plaintiff's request for a
continuance is denied as moot.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS
summary judgment in favor of Defendants on Plaintiff's

1   sole remaining claim, intentional interference with

2   contractual relations.

3

4   Dated:   December 20, 2012                                                  

5                                         VIRGINIA A. PHILLIPS

                              United States District Judge

18